**L. D. MOORE, Appellant,**

v.

**Walter H. ALLEN et al., Executors and the First United Methodist Church of Marlin, Texas, Appellees.**

**No. 5614.**

Court of Civil Appeals of Texas, Waco.

Oct. 21, 1976.

Rehearing Granted Nov. 18, 1976.

Robert G. Carter, Marlin, for appellant.

John B. Henderson, Jr., Cameron, Jack Welch, Marlin, Wiley Stem, Danny C. Wash, Waco, for appellees.

## OPINION

JAMES, Justice.

This is a suit for declaratory judgment to construe three holographic codicils. The primary question before us is whether the latest codicil, that dated October 19, 1974, is mandatory or precatory. The trial court held such codicil to be precatory. We hold the codicil to be mandatory and testamentary in nature, and therefore reverse and render the trial court's judgment in this regard.

The plaintiffs in this suit were Walter H. Allen and Mary Jane Reagan, Independent Executors of the Estate of Lalla Branson, Deceased. The defendants were L. D. Moore (Appellant herein), Ruby Henson and seven other individuals (who were devisees and legatees in the will and codicils of the testatrix, and whose rights are not in question in this appeal) and The First United Methodist Church of Marlin, Texas (hereinafter referred to as "the Church"). The above-named Executors and the Church are Appellees herein.

Lalla Branson, the deceased testatrix, died on April 5, 1975, and thereafter, to wit, on May 6, 1975, her will and three holographic codicils were duly probated in the County Court of Falls County, Texas. The record does not reflect that any appeal was taken from said order of probate.

The testatrix had never married, had lived most if not all of her life in Marlin, Texas, was advanced in years and probably in her eighties at the time of her death, and had no family that was known of. She was a very active member of the First United Methodist Church of Marlin, Texas, and was for a long period of time until her death treasurer and secretary of the Official Board as well as organist at said Church.

Her will was a typewritten instrument dated January 4, 1973, shown to be signed by her and attested by two witnesses. In said instrument after appointing her executor and executrix, in paragraph 2 she used the following language:

"2. To the First United Methodist Church of Marlin, Texas, I give and bequeath my home, located at the corner of Houghton and Carter Streets and being a part of Lot No. 15 of the Curry Addition to the town of Marlin." Thereafter followed a number of special bequests not necessary to be particularized herein, and a disposition of the rest and residue of her estate.

As stated, after the date of her will hereinabove described, the testatrix made three holographic codicils. The codicil dated "August 1974" began as follows: "What I want done with several things in my home. To Ruby Hynson: Everything in Mabel's room (n. east bedroom) except the clothes in the closet. Give them to someone who needs them. Also the marble top coffee table in the library downstairs southeast room. Also the Seth Thomas clock in the back room downstairs on mantel."

Thereafter followed this language: "L. D. Moore wants a chance to buy the home. Give him first chance. I am leaving him the clock at the foot of stairs." Then follows a number of specific bequests to various individuals of pictures, furniture, silver, china, and other household and personal effects. Near the end of this codicil she named eleven men as "pallbearers", the second man named being "L. D. Moore."

Her codicil bearing date of August 28, 1974, makes a number of specific bequests to various individuals of furniture and household items and personal effects which have no bearing upon the controversy at hand.

The third and last codicil bearing date of October 19, 1974, reads as follows:

"I have willed my home to First Methodist Church, but I want them to let L. D. Moore buy it for $10,000.00. The various things in my house that have not been assigned to a special person will go with the house.

"The house is 62 years old and at the present time needs lots of repairs, so we decided on the $10,000.00 price.

"Lalla Branson — October 19, 1974."

Trial was to the court without a jury after which the trial court held that the codicils of "August 1974" and of August 28, 1974 were testamentary in nature whereas the codicil of October 19, 1974 was precatory only and held to be of no legal effect. The essence of said judgment was to give testamentary effect to the specific bequests set out by the testatrix in the first two codicils and to give no legal effect to the codicil of October 19, 1974, wherein the testatrix said she had willed her home to the Church but "wanted them to let L. D. Moore buy it for $10,000.00." The trial court's judgment provided "the only obligation of the defendant church is to give L. D. Moore the first chance to purchase same at a fair value of same as determined by the defendant church, as authorized by the codicil dated August 1974."

Appellant L. D. Moore appeals from said judgment asserting error of the trial court in holding that the codicil of October 19, 1974 is precatory. Appellant contends that said codicil was mandatory and testamentary in nature and that he is legally entitled to buy the testatrix's home place from the Church for $10,000.00. We sustain Appellant's contention and hereby reverse and render the trial court's judgment so as to provide that Appellant L. D. Moore is entitled to purchase the testatrix's home place from the Church upon payment to said Church the amount of $10,000.00.

One of the cardinal rules in the construction of a will (or in this case a codicil) is to ascertain and declare the intent of the testator, and, if legal, to enforce that intent. *Bergin v. Bergin* (1958) 159 Tex. 83, 315 S.W.2d 943. When such intention can legally be ascertained with reasonable certainty it becomes the positive duty of the courts to effectuate and enforce the same, if it is not unlawful to do so. *Welch v. Rawls* (Waco, Tex.Civ.App., 1945) 186 S.W.2d 103, error refused, want of merit; 61 Tex.Jur.2d "Wills", par. 146, p. 268.

In the case at bar, the words used by the testatrix that "*I Want* them (the Church) to let L. D. Moore buy it for $10,000.00" is clear and unambiguous, and requires the application of no rules of construction in order to ascertain the intent of the testatrix. As this court said in *Welch v. Rawls*, supra: "In arriving at the intention of the testator, it is also the duty of the courts to look alone to the language actually employed in the will if that is legally possible or practicable." The term "I want" or "wanted" is often construed as mandatory when used in a will (or codicil) when it appears from the context or from the entire document that they are the expression of the testator's intention in making disposition of his property. *Bergin v. Bergin* (1958) 159 Tex. 83, 315 S.W.2d 943; *Welch v. Rawls* (Waco, Tex.Civ.App., 1945) 186 S.W.2d 103, err. refused want of merit; 61 Tex.Jur.2d "Wills," pars. 156, 157, pp. 282 et seq.

Lalla Branson had no known family or relatives at times material to this controversy. In times past she had a brother and sister who died many years ago. L. D. Moore was a member of Appellee Church, had lived in Marlin, Texas, about forty years and was at the time of trial and had been sales and service manager for a hardware firm in Marlin for thirty years. He and the testatrix were friends, by virtue of being fellow members in the Church and in addition thereto, Moore "kept her appliances going for years." Moore testified: "And a lot of times she would call me and I would be tied up maybe and I would go by after I got off and make the call and get her appliance going, whatever it might have been." On several of such occasions the testatrix talked to Moore about the house. Moore testified that she would always refer to it as "your house." Moore said, "and I would say, 'well, just what do you mean by my house'? She says, 'well, I have got it fixed where you have the first chance to buy it.' I said, 'well that's great and I appreciate it but whatever you put down I will have to borrow the money to buy it.' And that's about the extent of that."

After the testatrix had prepared the codicil of October 19, 1974, she put it in an envelope which had her return address in the upper left hand corner thereof, and wrote "L. D. Moore" on the front of the envelope. On a Sunday morning after church services, she walked over to Moore in church and handed to Moore this envelope containing the codicil and said, "Here, L. D. I want you to have this." After this occasion, the codicil remained in the possession of Moore or his attorney until after the testatrix's death, when Moore turned it over to the lawyer who probated the will and codicils.

Where, as here, there are three codicils to be taken into consideration in a case requiring will construction, and the codicil of October 19, 1974, in question is the last one made, it is to be presumed that the testatrix has reexamined the testamentary disposition in the original will and the two previous codicils before executing the last codicil; the will and the codicils are to be regarded as one instrument speaking from the date of the last codicil. And it naturally follows that insofar as the last codicil makes changes deviating from previous testamentary dispositions, the provisions of the last codicil will control. *Boyd v. Frost National Bank* (1946) 145 Tex. 206, 196 S.W.2d 497, 508; *Wattenburger v. Morris* (Fort Worth, Tex.Civ.App., 1968) 436 S.W.2d 234, NRE.

Appellee Church takes the position that the codicil of October 19, 1974 is merely expressive of a desire or wish of the testatrix and is therefore merely precatory in nature and should be given no testamentary effect. We do not agree with this contention. From the language used by the testatrix as contained within the four corners of the codicil and as further enlightened and explained by the surrounding circumstances, hereinabove stated, we believe it is beyond question that the testatrix intended the codicil of October 19, 1974, to be mandatory and testamentary in nature. We therefore hold that the trial court erred in holding the codicil in question to be precatory only, and reverse and render the trial court's judgment so as to provide that Appellant L. D. Moore is legally entitled to purchase the testatrix's home place from the Church by his payment to the Church of $10,000.00.

REVERSED AND RENDERED.

## ORDER GRANTING MOTION FOR REHEARING

Appellee, the First Methodist Church of Marlin, Texas, bases its motion for rehearing upon the ground of nonjoinder of the Attorney General of Texas, asserting that the Attorney General is a necessary and indispensable party to this cause under the provisions of Article 4412a, Vernon's Texas Civil Statutes. Appellee contends that since the Attorney General was never served with process as prescribed by Section 3 of Article 4412a, nor in any other manner joined as a party herein, that the judgment of the trial court is void and unenforceable, and should be set aside.

Moreover, the Attorney General has filed a motion in this court reciting that he has not been joined as a party either in the trial court or on appeal, and requests that the judgment of the trial court be vacated and set aside.

We sustain and grant both motions. This was and is a suit for declaratory judgment to construe the provisions of testamentary instruments creating and affecting a "charitable trust", as that term is defined in Art. 4412a, and as such falls squarely within the provisions of said Article. Section 2 of the Article makes the Attorney General of Texas a necessary party to an action to construe any instrument, testamentary or otherwise, affecting a charitable trust. Section 4 declares that a judgment rendered in a suit of this nature is void and unenforceable "without service or process upon the Attorney General", and further provides that "any such judgment shall be set aside upon motion of the Attorney General filed at any time thereafter."

In the case at bar, failure to join the Attorney General is fundamental error and thereby renders void the trial court's judgment. See *Akin Foundation v. Trustees for*

452

the *Preston Road Church of Christ* (Texarkana, Tex.Civ.App., 1963) 367 S.W.2d 351, no writ; *In Re Estate of Bourland v. Hanes* (Corpus Christi, Tex.Civ.App., 1975) 526 S.W.2d 156, NRE.

Under these circumstances, this court has jurisdiction to declare the invalidity of the trial court's judgment and to set it aside. *Williams v. Steele* (1908) 101 Tex. 382, 108 S.W. 155, 157; *Henn v. City of Amarillo* (1957) 157 Tex. 129, 301 S.W.2d 71, 73.

Moreover, as we understand the pronouncements of our Supreme Court, the proper disposition of this matter in this state of the record is to reverse and remand the cause to the trial court with direction that the original plaintiffs have a reasonable time to effect the joinder of the Attorney General of Texas as a party to the suit. See *Adams v. Bankers Life Co.* (Comm.App. 1931) 36 S.W.2d 182, opinion approved; *Sharpe v. Landowners Oil Assn.* (1936) 127 Tex. 147, 92 S.W.2d 435, opinion adopted; *Mason v. Mason* (Tex.1963) 366 S.W.2d 552. In this connection also see *Akin Foundation v. Trustees for Preston Road Church of Christ* (Texarkana, Tex.Civ.App., 1963) 367 S.W.2d 351, no writ. It is so ordered.

REVERSED AND REMANDED.