In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-05-00090-CV


______________________________




ADRIENNE GALLIEN AND JOSEPH GALLIEN, Appellants



V.



WASHINGTON MUTUAL HOME LOANS, INC.; 


FLEET MORTGAGE CORPORATION, Appellees




 


On Appeal from the 337th Judicial District Court


 Harris County, Texas


Trial Court No. 2004-41206




 




Before Morriss, C.J., Carter and Cornelius, *JJ.


Opinion by Chief Justice Morriss


_________________________________________

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment





O P I N I O N


 Joseph and Adrienne Gallien moved into their "dream home" but later, motivated in part by
a pending foreclosure action against the house, brought suit against several entities involved in the
Galliens' purchase of the home. There, the dream ended and a procedural nightmare began. At first
glance, the Galliens' appeal appears to center on a summary judgment rendered against them. (1) But
the procedural mechanisms employed before that summary judgment complicate the review of the
trial court's disposition and make the appeal less of a summary judgment case than one relating to
the trial court's order striking most of the Galliens' pleadings and effectively dismissing most of the
Galliens' case with prejudice.

 Because of three holdings--(1) the summary judgment, not the order striking pleadings,
started the appellate timetable; (2) it was error to strike the Galliens' pleadings; and (3) the summary
judgment was granted in error--we reverse the trial court's orders striking the Galliens' pleadings
and granting summary judgment, and remand this case to the trial court.

Background

 Through mostly interrelated entities, the Galliens' house in the Heritage Park Subdivision of
Harris County was built, financed, and insured. In fifty-three paragraphs of their original pro se
petition, the Galliens sought to certify a class of homeowners in their position and alleged twelve
causes of action generally involving alleged improper charges, overly increased mortgage payments,
and failures to handle taxes properly, thus adding to the Galliens' expenses. Notably, they also
requested various forms of injunctive and declaratory relief. 

 The following is a time line of relevant events:

August 3, 2004 Galliens filed original petition


August 3, 2004 Trial court granted temporary restraining order stopping the
foreclosure


August 31, 2004 Washington Mutual filed special exceptions to original petition


September 10, 2004 9:00 a.m.: hearing on special exceptions (2)

 11:17 a.m.: first amended petition filed


September 14, 2004 Trial court signed order sustaining Washington Mutual's special
exceptions only as to original petition 

 

September 21, 2004 Washington Mutual filed second special exceptions in which it
acknowledged that first amended petition was filed 09/10/04


November 18, 2004 Galliens filed second amended petition


January 14, 2005 Joint motion to strike filed


January 21, 2005 Trial court granted joint motion to strike with prejudice and MSV's
separate motion to strike


February 10, 2005 All Defendants filed joint "No Cause of Action" motion for summary
judgment


March 11, 2005 Trial court granted summary judgment and dismissed all claims with
prejudice


 A few of these events are especially noteworthy to our disposition of this appeal. Of the six
original defendants, only MSV was purportedly granted special exceptions regarding the first
amended petition. According to Washington Mutual and Fleet, the trial court orally granted those
special exceptions October 15, 2004. The record on appeal, however, contains no documentation
of that ruling, nor does it contain any order granting MSV's special exceptions. Washington Mutual
did move for special exceptions relating to the first amended petition, but the trial court never
sustained those exceptions. 

 Washington Mutual did obtain a ruling from the trial court sustaining its special exceptions
to the Galliens' original petition, but the order sustaining those special exceptions was not granted
until five days after the Galliens filed their first amended petition. (3) The record contains no special
exceptions filed by Fleet challenging any of the Galliens' pleadings.

(1) The Summary Judgment, Not the Order Striking Pleadings, Started the Appellate Timetable

 Washington Mutual and Fleet argue that the trial court's order striking the Galliens' pleadings
was, for all purposes, the final judgment in this case since that order struck with prejudice all causes
of action that the Galliens had asserted. Since the Galliens did not timely file a notice of appeal
relating directly to the order striking those pleadings, according to Washington Mutual and Fleet, the
instant appeal is untimely, and this Court is without jurisdiction over this appeal. We disagree.

 Generally, one may appeal only from final orders or judgments unless a statutory provision
authorizes an appeal from an interlocutory order. See Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266,
272 (Tex. 1992). To be a final judgment for purposes of appeal, the judgment must dispose of all
parties and all issues. See Martinez v. Humble Sand & Gravel, 875 S.W.2d 311, 312 (Tex. 1994). 
Here, the trial court granted the joint motion to strike and ordered the following:

 that Plaintiffs' Second Amended Verified Petition is struck in its entirety and strike
[sic] paragraphs sixteen (16) through fifty-two (52) of Plaintiffs' First Amended
Verified Petition are struck with prejudice to re-file or otherwise amend the same to
reassert their claims for class action, nuisance, nuisance per se, DTPA violations,
conversion, Texas Finance Code violations, RESPA violations, Texas Insurance
Code violations, Truth in Lending Act violations, breach of fiduciary duty and duty
to deal in good faith, breach of contract, usury, Fair Debt Collection Act violations,
Fair Credit Reporting Act violations, Equal Credit Opportunity Act violations,
disgorgement, fraud, and false representation.


The order struck the majority of the causes of action asserted in the Galliens' pleadings. However,
in paragraphs 55 and 56, the Galliens had sought injunctive and declaratory relief. Most notably, the
Galliens sought a declaratory judgment regarding specified amounts relating to their modified loan,
escrow account, and tax liability. While there is very little left after the trial court struck with
prejudice the majority of the Galliens' pleadings, these remaining allegations constitute sufficient live
pleadings such that we can conclude the order striking pleadings was not a final order for purposes
of appeal. (4)

 We conclude that the trial court's order granting the joint motion to strike was not the final
judgment in this case. The Galliens' failure to appeal from the order striking the majority of their
pleadings does not divest this Court of jurisdiction over this appeal when the order striking the
pleadings did not dispose of all the Galliens' claims. We overrule the contention that this Court lacks
jurisdiction over this appeal. 

(2) It Was Error to Strike the Galliens' Pleadings

 The subsequent summary judgment which concluded that no issues remained and formally
disposed of the Galliens' entire case is the final judgment from which we have measured the
applicable appellate timetables. The trial court based its summary judgment on the position that the
order striking the amended pleadings left no viable causes of action. We know that, on that basis,
the trial court could not have properly disposed of the claims contained in the pleadings not struck. 
In order to properly determine whether summary judgment was proper as to the claims included in
the struck pleadings, we must first examine whether the trial court properly struck with prejudice
those pleadings. 

 (a) Characterizing the Joint Motion to Strike

 Generally, in the context of challenging amended pleadings, a motion to strike serves to voice
the movant's objection to the filing of the amended pleading on the basis of surprise or prejudice. 
See Greenhalgh v. Serv. Lloyds Ins. Co., 787 S.W.2d 938, 940 (Tex. 1990); Estate of Menifee v.
Barrett, 795 S.W.2d 810, 812 (Tex. App.--Texarkana 1990, no writ). (5) Here, the joint motion to
strike takes on a somewhat different purpose, specifically objecting to the Galliens' failure to comply
with each of MSV's special exceptions. (6) The motion to strike also relied on the failure of the
Galliens to timely amend their petition in accordance with the October 25 deadline purportedly
established by the order sustaining MSV's special exceptions. 

 In the manner in which this motion to strike relies on purportedly sustained special
exceptions, the motion to strike seems more like a motion to dismiss, similar to the procedure
followed in Cruz v. Morris, 877 S.W.2d 45, 47 (Tex. App.--Houston [14th Dist.] 1994, no writ). (7) 
To the extent that a motion to strike, in and of itself, serves as a substantive attack on the amended
pleadings, it is an improper procedural mechanism. See Rodriguez v. United States Sec. Assocs., 162
S.W.3d 868 (Tex. App.--Houston [14th Dist.] 2005, no pet.); Centennial Ins. Co. v. Commercial
Union Ins. Cos., 803 S.W.2d 479, 482-83 (Tex. App.--Houston [14th Dist.] 1991, no writ);
Susanoil, 516 S.W.2d at 263-64. For this purpose, the rules provide an established mechanism in
the form of special exceptions. (8) See Tex. R. Civ. P. 90, 91. Similarly, to the extent that the motion
to strike relies on MSV's special exceptions as a means for striking any noncomplying pleadings, it
also lacks a basis.

 (b) Oral Ruling on MSV's Special Exceptions Cannot Serve as Basis for Motion to Strike

 In their motion to strike, Washington Mutual and Fleet relied on the trial court's oral ruling
on MSV's special exceptions to the first amended petition to argue that the Galliens' second amended
petition was untimely and that the amended pleadings failed to comply with the trial court's order
granting MSV's special exceptions. 

 We need not address whether MSV's special exceptions would allow other parties to move
on the basis of those special exceptions because, here, the record contains no written order sustaining
MSV's special exceptions. Without a written order on the special exceptions, MSV waived its
special exceptions. See Tex.-Ohio Gas, Inc. v. Mecom, 28 S.W.3d 129, 141 (Tex. App.--Texarkana
2000, no pet.); Smith v. Grace, 919 S.W.2d 673, 678 (Tex. App.--Dallas 1996, writ denied). 
Contrary to Washington Mutual's and Fleet's position, any oral ruling on a motion for special
exceptions may not serve as the basis for their joint motion to strike. That said, we proceed as
though no special exceptions were sustained with respect to the Galliens' amended pleadings.

 (c) Striking With Prejudice as Dismissal

 Even if the circumstances surrounding this cause authorized the trial court to strike the
Galliens' pleadings, the designation that the pleadings were struck with prejudice further complicates
matters. This designation transforms the order striking the pleadings into something more. The
absence of any special exceptions relating to the amended pleadings means, essentially, that the
Galliens' pleadings were struck with prejudice and without allowing them an opportunity to replead. 
In effect, the trial court's order striking the pleadings with prejudice actually disposed of the majority
of the Galliens' case. (9)

 First, we note that, as a general rule, the trial court cannot dismiss a suit with prejudice when
the plaintiff does not cure the objections made by special exceptions. See Humphreys, 938 S.W.2d
at 753; Kutch v. Del Mar College, 831 S.W.2d 506, 508 (Tex. App.--Corpus Christi 1992, no writ). 
More specifically, a trial court cannot dismiss a plaintiff's entire case with prejudice if the pleadings
state a valid cause of action, but are vague, overbroad, or otherwise susceptible to valid special
exceptions. See Kutch, 831 S.W.2d at 508. 

 Second, we look to Rodriguez for guidance on how to analyze a case in which a motion to
strike was similarly used to effect a dismissal. 162 S.W.3d at 873. In Rodriguez, the court pointed
out that the Texas Rules of Civil Procedure do not authorize use of a motion to strike as it was used
in that case to summarily dismiss Rodriguez' claims without an opportunity to replead. Id.

 The Fourteenth court went on to thoroughly explain the complications and difficulties in
reviewing a case in which a motion to strike was so used:

 As this court explained in Centennial, motions for summary judgment and special
exceptions provide well-settled procedural guidelines and protections, but motions
to dismiss claims for failing to state a cause of action do not. Centennial, 516
S.W.2d at 483. Under the Texas Rules of Civil Procedure, the proper way for a
defendant to urge that a plaintiff has failed to plead a cause of action is by special
exception. Id. 


 The circumstances of this case illustrate the dangers of dismissing claims using an
unauthorized procedural vehicle like the motion to strike used here. First, the motion
was not properly denominated in accordance with the rules of civil procedure. 
Second, it triggered no specified timetables or protective procedures. Third, it was
granted without an opportunity for Rodriguez to amend his pleading before his
claims were stricken.


 On appeal, the lack of any established procedures or guidelines presents us with
additional difficulties. It is not clear what standard of review we are to apply to the
trial court's action. In its brief, USSA mentions the abuse-of-discretion standard, but
at oral argument, it suggested de novo review was appropriate, and admitted that it
found no cases addressing the appropriate standard of review to apply. We also have
had difficulty interpreting the motion as a pleading that is authorized by the rules of
civil procedure. The motion to strike cannot be considered a motion for summary
judgment, because it did not comply with the specific procedures outlined in Texas
Rule of Civil Procedure 166a. See Tex. R. Civ. P. 166a(c) (specifying requirements
of summary judgment motion and proceedings). Likewise, it cannot be interpreted
as special exceptions because it was not denominated as such, and neither the parties
nor the court treated the motion to strike as special exceptions.


Id. at 874. We echo the Fourteenth court's frustration here. In many ways, it appears that
Washington Mutual and Fleet utilized their motion to strike in such a way as to make it unclear how
to review the trial court's decision to grant the motion to strike and its subsequent order granting
summary judgment. From the motion to strike, it is clear Washington Mutual and Fleet were
concerned with both the timeliness of the second amended petition and the substance of the
amendments. It is also clear that, although no special exceptions had been sustained as to these
amended pleadings, the trial court's order summarily disposed of the bulk of the Galliens' case
without affording them their opportunity to replead. (10) As the Rodriguez court points out, the Texas
Rules of Civil Procedure do not authorize this course of action as means of summarily dismissing
a plaintiff's claims without the opportunity to replead. See id. at 873. 

 In Humphreys, the Fort Worth court pointed out that a trial court may not dismiss a case for
a pleading defect unless the trial court first affords the party an opportunity to amend and cure the
defect. 938 S.W.2d at 753. Since Meadows did not file special exceptions to Humphreys'
amendment, the court concluded the trial court abused its discretion in dismissing the case. See id. 
The Fort Worth court relied heavily on the Albright decision:

 In [Albright], after the trial court sustained the defendants' special exceptions, the
plaintiffs filed two amended pleadings. Albright, 859 S.W.2d at 582. The
defendants then filed a motion to dismiss without first filing special exceptions to the
plaintiffs' second amended pleading. Id. The trial court dismissed the plaintiffs' case
without giving the plaintiffs the opportunity to amend their revised pleadings. 
Albright, 859 S.W.2d at 582-583. The court of appeals reversed the trial court's
dismissal, finding that the plaintiffs were entitled to the opportunity to amend. 
Albright, 859 S.W.2d at 583. We agree with that analysis. Because neither Meadows
nor Wayman specially excepted to Humphreys's "Amendment to Petition" and the
trial court did not grant any special exception to the "Amendment" or allow
Humphreys the opportunity to cure any defects in the "Amendment," we hold that the
trial court abused its discretion in dismissing Humphreys's case based on
insufficiency of the pleadings.


Humphreys, 938 S.W.2d at 754.

 Of course, dismissal might be appropriate in certain circumstances. The Dallas court has
concluded that, pursuant to Section 21.001(a) of the Texas Government Code, (11) a trial court has the
inherent power to strike a party's pleadings and enter judgment for the opposing party in response
to repeated noncompliance with the trial court's orders. See Sherman v. Triton Energy Corp., 124
S.W.3d 272, 279-80 (Tex. App.--Dallas 2003, pet. denied) (citing Woodall v. Clark, 802 S.W.2d
415, 418 (Tex. App.--Beaumont 1991, no writ)). Specifically, "[i]f the trial court sustains special
exceptions and requires a party to re-plead, the litigant must obey the order and file a curative
amendment or suffer the consequences of dismissal." See Hefley v. Sentry Ins. Co., 131 S.W.3d 63,
65 (Tex. App.--San Antonio 2003, pet. denied). 

 The instant case is unlike the Sherman and Hefley cases in that no special exceptions had
been sustained as to the amended pleadings and, as stated, the Galliens had voluntarily amended their
original petition before the trial court sustained the special exceptions to the original petition. That
is, their first amended petition was not a response to the trial court's order sustaining special
exceptions. Therefore, their amended pleadings could not fairly be measured against those special
exceptions when the trial court had not yet sustained them at the time the Galliens filed their first
amended petition. So, essentially, the Galliens had not been specifically ordered to amend their
original petition. The Galliens, unlike the plaintiffs in Sherman and Hefley, had not had the
opportunity to amend in an attempt to comply with the trial court's orders sustaining special
exceptions. And, therefore, the Galliens should not have had to suffer the "consequences of
dismissal" on these facts. 

 Here, the net effect of the trial court's order striking the bulk of the Galliens' pleadings with
prejudice is the dismissal of the Galliens' case without allowing them an opportunity to amend their
pleadings. Relying on the rationale in Rodriguez and drawing on the similarities between the instant
case and the Humphreys and Albright decisions, we conclude the trial court abused its discretion by
striking with prejudice the majority of the Galliens' pleadings.


 (d) Local Rule Regarding Failure to File Written Response Cannot Determine Merits of 
 Case


 As an additional argument to support the summary judgment and the order striking pleadings,
Washington Mutual and Fleet rely on Harris County Local Rule 3.3.2 to argue that the Galliens did
not oppose the motion to strike because they did not file a written response to the motion. Local
Rule 3.3.2 relates to motions and responses and provides simply: "Responses shall be in writing and
shall be accompanied by a proposed order. Failure to file a response may be considered a
representation of no opposition." Harris (Tex.) Civ. Dist. Ct. R. 3.3.2.

 The Fourteenth Court of Appeals has written a great deal on local rules in general. "No court
in Texas is authorized or empowered to enact or amend rules of civil procedure that would be
inconsistent with the rules promulgated by the supreme court." Centennial Ins. Co., 803 S.W.2d at
482; see also Polk v. Southwest Crossing Homeowners Ass'n, 165 S.W.3d 89, 93 (Tex.
App.--Houston [14th Dist.] 2005, pet. denied). More specifically, the Fourteenth court has
considered Rule 3.3.2 and concluded that, when an opponent to a motion to strike made his or her
opposition otherwise clear by opposing the motion at the hearing, his or her failure to file a written
response to the motion did not lead to the conclusion that the motion was unopposed under Rule
3.3.2. See Hooper v. Chittaluru, No. 14-05-00058-CV, 2006 Tex. App. LEXIS 5532, at *16-17
(Tex. App.--Houston [14th Dist.] Mar. 28, 2006, no pet.) (not designated for publication). The trial
court would have abused its discretion had it granted the motion solely on such basis. Id.

 Rule 3.3.2 may not be applied to have the effect proposed by Washington Mutual and Fleet. 
The Texas Rules of Civil Procedure provide specific limitations on the enactment and application
of local rules:

 Each administrative judicial region, district court, county court, county court at law,
and probate court, may make and amend local rules governing practice before such
courts, provided:

 

 (1) that any proposed rule or amendment shall not be inconsistent with these rules or
with any rule of the administrative judicial region in which the court is located;


 . . . .


 (6) no local rule, order, or practice of any court, other than local rules and
amendments which fully comply with all requirements of this Rule 3a, shall ever be
applied to determine the merits of any matter. 


Tex. R. Civ. P. 3a(1), (6). Therefore, we conclude application of Rule 3.3.2 cannot serve as a
substitute for deciding whether the trial court properly granted the motions to strike--or the motion
for summary judgment discussed below. The Texas Rules of Civil Procedure simply will not allow
such a result.

 Striking the Galliens' pleadings was error.

(3) The Summary Judgment Was Granted in Error

 While Washington Mutual and Fleet used their motion to strike to improperly challenge the
Galliens' amended pleadings, the trial court did not--at the same time as it struck the
pleadings--formally dismiss the case (even though the order did disallow the Galliens' refiling or
amending their causes of action). So, in that way, the instant case may be slightly different than that
faced by the Rodriguez court, although it could be said that the order striking the Galliens' pleadings
with prejudice to their refiling is the functional equivalent of a dismissal. Here, the trial court
formally dismissed the case later by granting Washington Mutual's and Fleet's motion for no cause
of action summary judgment.

 Because the order striking the second amended petition and the majority of the first amended
petition left viable causes of action and because the trial court improperly struck with prejudice the
other pleadings, the trial court's order granting summary judgment on the basis that the Galliens had
no causes of action remaining was, likewise, improper.

 When Washington Mutual and Fleet thought the Galliens' amended pleadings failed to
comply with prior special exceptions, Washington Mutual and Fleet arguably could have filed a
motion for summary judgment on the grounds that the amended pleading remained defective. (12) 
Summary judgment based on a pleading deficiency may be proper if a party has had an opportunity
by special exception to amend and fails to do so, or files an additional defective pleading. See Tex.
Dep't of Corrections v. Herring, 513 S.W.2d 6, 10 (Tex. 1974). Summary judgment may also be
proper if a pleading deficiency is of the type that could not be cured by an amendment. See Swilley,
488 S.W.2d at 67.

 Washington Mutual's and Fleet's "no cause of action" motion for summary judgment granted
here would initially seem to be just such a motion for summary judgment based on pleading
deficiencies. However, after closer inspection, we see that the summary judgment at issue is not
such a motion. Instead, the motion for summary judgment, here, explains that all pleadings had been
struck with prejudice and that the Galliens had no remaining causes of action; it does not directly
speak to the sufficiency of the Galliens' amended pleadings. Nor, as we have detailed, are there any
special exceptions as to these amended pleadings that would serve as the predicate for a "no cause
of action" summary judgment. See Herring, 513 S.W.2d at 10. The trial court's order specifically
refers to the motion for summary judgment, grants the motion, and goes on to formally dismiss the
Galliens' case with prejudice. 

 The Fourteenth Court of Appeals, from which this case was transferred, heard a case similar
in many respects to the instant case. In Granado v. Madsen, a motion to strike and summary
judgment were similarly used to achieve dismissal. 729 S.W.2d 866 (Tex. App.--Houston [14th
Dist.] 1987, writ ref'd n.r.e.). The Granado court first addressed which order should control the
appeal: the order striking and dismissing or the order granting summary judgment. Id. at 870. The
court arrived at the conclusion that it would review the trial court's order striking and dismissing,
rather than its later order granting summary judgment:

 The order was of no effect for two reasons. First, on that date the plaintiffs had no
live pleadings asserting claims against Dr. Madsen and, hence, there existed no cause
of action against which summary judgment could have been granted.


 The summary judgment order was a nullity. We therefore find that the order of the
court striking the Granados' pleadings and dismissing with prejudice their cause
against Dr. Madsen to be the controlling order of this appeal.

Id. In a rather critical tone, the court went on to sustain the Granados' contention that the trial court
abused its discretion in granting Madsen's motion to strike and in dismissing with prejudice the
claims against Madsen. Id. at 870-71. The court pointed out that dismissal when issues are disputed
without affording the parties their right to a full trial on the merits is an extraordinary sanction
allowed only in limited circumstances, none of which were presented by the facts of that case. Id.
at 871. Likewise, dismissal of the Galliens' case is equally unreasonable in light of their good-faith
attempts to amend their petition and the failure of Washington Mutual and Fleet to follow the
established special exceptions procedure to challenge the amended pleading in a proper manner.

 We conclude the trial court's order granting summary judgment was improper. We, therefore,
reverse the trial court's order granting summary judgment and remand the cause to the trial court for
further proceedings consistent with this opinion.

Conclusion

 This case demonstrates the improper use of the motion to strike as a means to challenge the
sufficiency of the pleadings. Here, the use of that procedural mechanism erroneously denied the
Galliens' procedural rights. Such an action is reversible error. Accordingly, we reverse the trial 


court's orders striking the Galliens' pleadings and granting summary judgment, and remand the case
for further proceedings consistent with this opinion.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: September 13, 2006

Date Decided: December 8, 2006
1. Washington Mutual and Fleet Mortgage Company (Fleet) are the appellees remaining in this
appeal. Appellees Kaufman and Broad Lone Star, L.P., Kaufman and Broad Mortgage Company,
and San Antonio Title Company settled their disputes with the Galliens after submission of the
appeal. On their motion, this Court severed the appeal as to those three appellees and dismissed that
appeal. See cause number 06-06-00101-CV. Mortgage Source Ventures Corporation (MSV) was
never a party to the appeal.
2. With respect to the September 10, 2004, hearing, there is some controversy between
Washington Mutual and the Galliens. The Galliens contend that they spoke with Washington
Mutual's attorney on September 9 and explained that the hearing would be unnecessary since they
were going to file their amended petition the following day. Regardless of whether that conversation
took place, Washington Mutual did appear at the September 10 hearing. The trial court was
concerned about the fact that it appeared that the Galliens had indicated the parties agreed to reset
the hearing for October 8. Nevertheless, after Washington Mutual represented by letter to the trial
court that no agreement had been reached to postpone the hearing, the trial court signed its order
granting Washington Mutual's special exceptions on September 15, 2004.
3. The Galliens contend the trial court erred by sustaining Washington Mutual's special
exceptions as to their original petition. We note the possibility that the Galliens waived any error
as to this point by filing their amended pleadings. See Dodson v. Citizens State Bank of Dalhart, 701
S.W.2d 89, 95 (Tex. App.--Amarillo 1986, writ ref'd n.r.e.) (holding that party waives complaint
about court's action sustaining special exceptions when party files amended pleading to conform with
those exceptions). But see Mulvey v. Mobil Producing Tex. & N.M., Inc., 147 S.W.3d 594, 604 (Tex.
App.--Corpus Christi 2004, pet. denied) (expressly rejecting Dodson's approach and concluding that 
party who amends his or her pleadings does not waive ability to contest order sustaining special
exceptions on appeal). However, we recognize that the timing of the trial court's order sustaining
those special exceptions clouds this issue since the Galliens had voluntarily amended their pleadings
before the trial court signed its order. At any rate, disposition of this particular point is not necessary
to the disposition of the appeal. See Tex. R. App. P. 47.1.
4. Since the second amended petition was struck in its entirety, the order striking would have
the effect of "reviving" what portions of the first amended petition were not struck. See Tex. R. Civ.
P. 65. 
5. Rule 63 of the Texas Rules of Civil Procedure provides that the trial court must grant leave
to file an amendment unless there is a showing that the amendment will operate as a surprise to the
opposing party. See Tex. R. Civ. P. 63; Barrett, 795 S.W.2d at 812.
6. "The nomenclature of the motion is not controlling for it is well established that the court
looks to substance rather than to form in determining the nature of relief or action sought by the
party." Susanoil, Inc. v. Cont'l Oil Co., 516 S.W.2d 260, 264 n.4 (Tex. Civ. App.--San Antonio
1973, no writ). The San Antonio court continued:


 Irrespective of whether you term this document a motion to strike, a speaking
demurrer, a general demurrer, or a special exception, the result was that a
take-nothing judgment was entered thereon on the morning that it was filed, without
appellants having the opportunity to amend or to present evidence. The court's
judgment had the same effect as if a summary judgment had been granted, without
going through the requisites of summary judgment procedure, or as if a general
demurrer had been sustained under the old general demurrer practice.


Id. at 263-64.
7. A motion to strike the whole pleadings can have the same effect as a general demurrer. See
Susanoil, 516 S.W.2d at 264. To the extent that this motion to strike accomplishes the same purpose
as that of a general demurrer, we note that the Texas Rules of Civil Procedure expressly prohibit the
use of such a vehicle. See Tex. R. Civ. P. 90; Fort Bend County v. Wilson, 825 S.W.2d 251, 253
(Tex. App.--Houston [14th Dist.] 1992, no writ).
8. Special exceptions may be used to challenge the sufficiency of a pleading. See Tex. R. Civ.
P. 91; Friesenhahn v. Ryan, 960 S.W.2d 656, 658 (Tex. 1998). When the trial court sustains special
exceptions, it must give the pleader an opportunity to amend the pleading. Parker v. Barefield, No.
06-0201, 2006 Tex. LEXIS 1064, at *2 (Tex. Oct. 27, 2006). If a party refuses to amend, or the
amended pleading fails to state a cause of action, then summary judgment may be granted. Id. 
Summary judgment may also be proper if a pleading deficiency is of the type that could not be cured
by an amendment. Swilley v. Hughes, 488 S.W.2d 64, 67 (Tex. 1972).
9. Whether we treat the trial court's order as simply an order striking pleadings or as the
functional equivalent of a dismissal, we would apply the abuse of discretion standard of review. See
Hisaw & Assocs. Gen. Contrs., Inc. v. Cornerstone Concrete Sys., 115 S.W.3d 16, 20 (Tex.
App.--Fort Worth 2003, pet. denied); Humphreys v. Meadows, 938 S.W.2d 750, 753 (Tex.
App.--Fort Worth 1996, writ denied).
10. We must explain that the Galliens did have the right to replead. We again note our concern
regarding the effect of the trial court's granting of special exceptions to the Galliens' original petition
when they had already filed their first amended petition. Even if these special exceptions to the
original petition are of effect, however, the Galliens' first amended petition represents a good-faith
effort to comply with the special exceptions and, therefore, entitled them to another opportunity to
remedy any pleading defects. See Humphreys, 938 S.W.2d at 753 (holding that, if plaintiff makes 
good-faith attempt to amend his or her petition in response to trial court's sustaining of defendant's
special exceptions, trial court may not dismiss plaintiff's amended petition unless defendant files
special exceptions to revised pleadings, court sustains the new special exceptions, and court gives
plaintiff opportunity to amend revised pleadings). 
11. Section 21.001(a) provides for the "inherent power and duty of courts" as follows: "A court
has all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders,
including authority to issue the writs and orders necessary or proper in aid of its jurisdiction." Tex.
Gov't Code Ann. § 21.001(a) (Vernon 2004).
12. This, of course, assumes that the special exceptions granted with respect to the original
petition were of some force even though the trial court granted the special exceptions to the original
petition after the Galliens had filed their amended petition. When the plaintiff has a viable cause of
action but pleaded it defectively, the defendant should first file special exceptions, rather than a
motion for summary judgment. Friesenhahn, 960 S.W.2d at 659; Natividad v. Alexsis, Inc., 875
S.W.2d 695, 699 (Tex. 1994).